CAPTION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELBERT WELCH, #00-B-1648,

07_CV 0831 (CS)

Plaintiff,

**AMENDED
COMPLAINT
JURY TRIAL DEMANDED**

v

ORLEANS CF OFFICIALS:
Lt OLDENBERG;CO WELLS; Capt HOLLENDER; Lt TAMIEL;
CO FREEMEN;CO WRIGHT;CO CLEMENTS;CO LANDERMAN;CO MARDINO;
CO MEEHAN;CO FORTUNADO;CO SLOU;DR DOUGLAS;SUPT DAVID
UNGER; DEP SUPT SECURITY LABRIOLA; SGT WARNE;CO AMBROSE;
CO WILSON

**07-CV-0973(FJS/DRH)**

ALBANY DOCS OFFICIALS:
NYS ATTORNEY GENERAL; BRIAN FISHER,Commissioner;DONALD SELSKY,Director
SHU/Inmate Discipline; RICHARD ROY,Inspector General; MR DENBIK,
Assistant Inspector General; GLENN S GOORD,Commissioner; LUCIEN
LECLAIRE,JR ,Deputy Commissioner

CLINTON CF OFFICIALS:
DR ROBERT SNIDER; DR JOHN DOE; E S LEFEVRE,Former Supt ; DALE ARTUS,
Supt;CAPT BROWN; Lt ARMITAGE; Lt K KAVANAUGH; CO T CHARLAND;
CO K CHARLAND; Capt J CAREY; Hearing Officer EGGLESTON;CO J SPEAR;
CO LAVARNWAY;CO BEZIO;REGISTERED NURSE KATHY;REGISTERED NURSE JUDITH
BURNAH; REGISTERED NURSE PAULETTE HALE;CO FITZGERALD; CO DUROCHER;
CO BROWN;CO R FRASER; CO K BURKARD;CO W FUKIS; CO R ROBERTS; CO
O DIBYIH;CO DAVID MALARK;CO TERRY AUBIN; CO M BLAIRE;CO BROWN;CO
JAMES E FACTAU;CO TURNER;CO WILL ELEEH;CO DURKEE;CO R FOUNTAIN:CO
LAFOUNTAIN;CO LAROUE;CO S BURREY;CO D PESCIA;CO D JUNEAU;CO W H
DROLLETTE; CO W DASHNAW;HEARING OFFICER D A MCJUIRE;CO NEWELL;CO
BENWARE;CO CANNING;CO FRENYEA;CO HARNDEN;CO LABONTE;SGT GRATTO;SGT
COLON;Lt McCASLAND;Acting Dep Supt J W CURRAN;Lt BARON;SGT WINCH;
Lt W J RIVERS;Lt WAY;Dr REYES;Dr PHIL;Dr EDWARDS; Dtr JOHN DOE
(PSYCHOLOGIST);Dep DSupt J TEDFORD,SGT DUOUETTE;Lt BALDWIN; Lt
LAVALLEY;CO KRIPLIN; CO DICKSON;CORR COUNSELOR WELCH;Lt DICKSON;
Lt RENNEDETTI; Lt LABARON ;CO **ROBIN STEIN**;

Defendants
_____

i

CAPTION CONTINUED

GREAT MEADOW CF OFFICIALS:
DR FOOTE;DR KOOCK JUNG; DR GLENNON; REGISTERED NURSE YULE; Supt E W
JONES; Dep Supt Security EISENSCHMIDT; Sgt CARPENTER; Sgt COPELAND;
Sgt JOHN DOE;CO SOKOL;Lt C A TAYLOR; Sgt RACE; CO SQUEEZY;; Lt JOHN
DOE; CO T E MATTESON ; CO W PEREZ; HEARING OFFICER B BAILEY; CO THAYER;
CORR COUNSELOR R YAYMONDS;CO KENNETH BUMP; CORR COUNSELOR THOMPSON;
CO D HILLBOURNE; CO QUACKENBUSH; CO DOUG WILLIAMS; CO JORGENSON; CO
BALISE;CO R M BUBE;CO WILLIAM DONALDSON;CO FRANK MEGLANY;CO HELLBURUE;
CO J W GRIFFITH;CO H DUSTER

AUBURN CF OFFICIALS:
Supt GRAHAM;Dep Supt Security BELLNIER; Lt OUIMETTE;Dep Supt ROURKE;
CO HAI; Sgt PASCE;

FIVE POINTS CF OFFICIALS:
Supt EISENSCHMIDT; Dep Supt MICHAELIS;Sgt JASTRZAB;PROTECTIVE CUSTODY
INTERVIEWER;Corr Counselor ZEN ZEN;DEPUTY SUPT OF SECURITY JOHN DOE;

MARCY CENTRAL NEW YORK PSYCHIATRIC CENTER OFFICIALS:
Dr SUE

COXSACKIE CF OFFICIALS:
Supt ISREAL RIVERA; CO HOBART (I); CO HOBART(II); Sgt JOHN DOE;

GOUVERNEUR CF OFFICIALS:
Supt JUSTIN TAYLOR;MR BRUYER,Food Service Employee;

NIAGARA COUNTY OFFICIALS:
Former Judge CHARLES HANNIGAN; Former ADA PETER BRODERICK;Former DIST
ATTORNEY ALDO DIFLORIO:; Acting Judge JAMES PUNCH; Former ADA CLAUDE
JEORG; Attorney MICHAEL VIOLANTE;Attorney JOSEPH CAROSELLA; Attorney
LESTER SCONIERS;

APPELLATE DIVISION,4TH DEPT JUSTICES:
JOHN H DOERR; PINE;HAYES;WISNER;HURLBUTT;LAWTON;CALLAHAN;WITMER;SIMONS;
DILLON;

                                                    Defendants

CAPTION CONTINUED

NIAGARA COUNTY SHERIFF OFFICIALS:
Investigator PETER COCCO; Investigator WILLIAM EVANS;Investigator
MIKE MESSINA: Investigator MARK DRIESS.

NEW YOR STATE POLICE OFFICIALS:
Investigator JIMMY PHELPS;Investigator BRENDA ROBERTS;Investigator
CALLOWAY;Investigator TALFORD; Investigator COLON;

NIAGARA FALLS CITY OFFICIALS
Detective JIM GALIE; Detective PAUL PIERINI; Detective JOHN
GALIE; Detective PAT STACK; Detective Lt MOMS; CITY COURT JUDGE
MARK VIOLANTE

NIAGARA COUNTY JAIL OFFICIALS:
Dr  JAMES HOHENSEE; Registered Nurse Deanna PATTERSON; Dr  SUSAN
WAYTAK; Captain PAYNE; Sgt  STICKNEY; Supt CLARK; CO PAYNE; FOUR
JOHN DOE CERT OFFICERS

MOHAWK CF OFFICIALS:
Supt  REYNOLDS; CO PLUMLY; CO BARTELL; Sgt HUND;CO ALBRIGHT;RIOT
OFFICER NUMBER 75

ATTICA CF OFFICIALS:
Former Supt  WALTER KELLY; Former Supt HAROLD SMITH;Former Dep
Supt Security HANS WALKER; Former Dep Supt CHARLES SCULLY;Dr
SAMUELS; Dr Schmid(Psycholigist);Registered Nurse FRANCIS MILLS;
Dr BISSETT; Dr **BISSELL**; CO AHEARN; Lt HENNEBERG;CO CHILAIN;Lt JAMES;
CO HORVATIS; CO WITKOWSKI; CO COUGHLIN; CO TEMPORORSKI;CO CZERNIAK;
CO COUNTERMINE; CO STRANAHAN;CO R FRASER; LT E S MALENSKI; HEARING
OFFICER IDHO J KIHL; CAPTAIN O'CONNOR; LT  WOLFE

WARREN COUNTY OFFICIALS:
JUDGE THOMAS MOYNIHAN; MUNICIPAL WARREN COUNTY

MUNICIPAL NIAGARA COUNTY; MUNICIPAL CITY OF NIAGARA FALLS;MUNICIPAL
WASHINGTON COUNTY

                                                      Defendants

CAPTION CONTINUED

---

NEW YORK STATE PAROLE OFFICIALS:
PAROLE COMMISSIONERS EICHELBERGER; UMINA;LEVY;BUCHANAN;

McSHERRY;JOHN DOE; Chairman MARTIN HORN;JUDY BUNDY.

Prosecutor;RICHARD LAW,Hearing Officer;JUDITH CUMMINS,Administrative

Law Judge; GEORGE TRIMPER. Administrative Law Judge;LUMINA

POMERLEAU,Preliminary Hearing Officer;ALPINA TAYLOR,Prosecutor;

SIX CONFIDENTIAL INFORMANTS FOR NIAGARA COUNTY SHERIFF
INVESTIGATORS PETER COCCO AND WILLIAM EVANS:
CONFIDENTIAL INFORMANTS TP10;TP11;RPW1;AND THREE SEPARATE CIs


Defendants

---

FACTS

1) This is a civil rights action brought pursuant to 42 USC 1983,1985 & 1986 against various state' and local officials seeking injunctive relief,declaratory relief and monetary damages.

2) This complaint raises claims that defendants engaged in a continuous course of conduct,adopted policy & practice to conspire & deprive me of equal protection of the laws and to discriminate against me thereby entitling me to bring this suit challenging all conduct that is part of the violation even conduct outside the statute of limitations period pursuant to Cornwell v Robinson,23 F3d 694(2d Cir 1994).

3) I further contend that I qualify to proceed in forma pauperis herein despite having garnered three strikes in the past in that I am in "imminent danger" of serious physical injury or death from acts of conspirators involved in this conspiracy who have caused me to be inflicted with serious illnesses of hepatitis C (HCV) and liver damage by repeated surreptitious contamination/poisoning of my food by use of cleaning fluids that are readily and continuously available to inmates and staff who prepare and serve the food in all facilities and by use of body fluids which conspirators have repeatedly contaminated my foods with over the years as part of' this conspiracy and adopted policy and practice of New York State Department of Correctional Services (NYS DOCS) who intend that their acts will have a cumulative effect of killing me.

4) I further contend that I am in imminent danger of serious physical injury or death from the adopted policy and practice of NYS DOCS officials to provoke me into' fights and disciplinary action in furtherance of the conspiracy and its goals some of which are to kill and discredit me,and to kill members of my family as well as to defraud the federal government.

5) I have been involved for many years with the FBI and U S Department of Justice (Dept of Justice) as well as the Western and Northern District Courts of New York as complainant crime victim civil rights litigant as well as federal government witness in an ongoing FBI investigation as to this massive conspiracy which includes NYS DOCS employees and many others who conspired to kill me my family members and to defraud the federal government and to further other goals of the conspiracy such as to discredit its existence and their own complicity in it.

6) Based on my involvement in these matters as victim,eyewitness and complainant I am fully aware that the FBI has long ago launched an FBI investigation into this conspiracy and has confirmed its existence. I have sought disclosure of records, witnesses and documents from the FBI pursuant to Title 5 USC 522 as well as 28 CFR 16.22(b) & 16.24(a) and have been granted only limited disclosure with the FBI making claims of sovereign immunity and stating that disclosure of the witness and

documentary evidence pertaining to this conspiracy is prohibited under federal law and citing U S ex rel Touhy v Ragen 340 US 462,71 S Ct 416(1951) as dispositive of this type of situation. I have exhausted all administrative remedies and appeals and have recently instituted a complaint in the District of Columbia seeking disclosure of witness and documentary evidence regarding this matter which is inextricably involved in my conspiracy claims. The District of Columbia recently transferred that case to the Western District of New York.

7) I have written many and countless complaints to the FBI, U S Dept of Justice as well as all high level NYS DOCS officials and their subordinates such as Superintendents of Clinton, Five Points, Great Meadow,Attica,Coxsackie,Auburn,Orleans Correctional Facilities,I have been confined in over the years regarding this conspiracy and yet conspirators continue to commit overt and covert acts to further said conspiracy and its goals.

8) I am currently a NYS prisoner and federal government witness in the said FBI investigation involving numerous NYS DOCS as well as NYS Police and other local police officials who are all targets of the FBI investigation and are conspirators involved in the instant conspiracy which is well documented with the FBI who as shown by the limited FBI documents released to me have investigated this massive conspiracy on many occasions in the past.

9) I have also spoken both in person and via phone interviews with FBI Agents on numerous occasions over the years and am fully aware that the conspiracy has been investigated and confirmed to exist.

10) In two separate pending cases this Court has ruled that my complaints set forth sufficient facts showing that I am in imminent danger of serious physical injury from plots to poison my food (Welch v T Charland et al 06 CV 0061(LEK/DEP); and from plots to murder me (Welch v Selsky et al ,06-CV-812(LEK/DEP)). In both cases the complaints have been served on the numerous NYS DOCS defendants.

11) I am a federal witness,crime victim and civil rights complainant who is serving a lengthy prison sentence and will not be eligible for parole until 2013 arising out of prison terms being served based on acts of conspirators NYS Police,Niagara County and City police officials (all of whom are targets of the FBI investigation well documented with the FBI and Dept of Justice).          On a daily basis I face the risk of being seriously injured or killed from this conspiracy while DOCS officials and coconspirators make regular attempts to consummate their murder plot and to discredit me and their own complicity.

12) A conspiracy is a partnership the 'object of which is the achievement of an unlawful or improper objective,and one who forms or joins it is liable for all acts of the coconspirators committed in furtherance of the conspiracy. Pinkerton v U S ,66 S

Ct 1180,1182-1184(1946); Johnson v Nyack Hosp ,954 F Supp  717,721(SDNY 1997). One who forms or joins it is liable for all acts committed in furtherance of the conspiracy; and once having joined a conspiracy each conspirator is presumed to continue as a member until the conspiracy ends with its abandonment or the accomplishment of its unlawful purpose or until the conspirator withdraws by some affirmative act. Id

13) The conspiracy herein,as with other conspiracies is by its nature secretive and as victim thereof I am unlikely  to have access to such facts before bringing  suit. See Vasquez v Ferre,404 F Supp 815,822(D N J 1975). I am not required to allege exactly where and when and with what words a conspiracy agreement was formed,Magayanes v Chicago,496 F  Supp 812,815-816(N D Ill 1986); Reichardt v Payne,396 F Supp 1010 (N D Cal 1979),affd  in part remanded on other grounds,591 F 2d ʳ499(9th Cir 1979);and an overt act need not be pleaded against each defendant because a single overt act by just one of the conspirators is enough to sustain a conspiracy claim even on the merits. Vietnamese Fishermens Association  v Knights of the Ku Klux Klan,518 F  Supp 993(S D Tex 1983), I am submitting "specific factual allegations connecting the defendant(s) to the injury" Single v LeVan,485 F Supp 185,196(D Md 1980); Ostrer v Aronwald,567 F2d 551(2d Cir 1977) which give defendants notice of how they are alleged to have participated in the conspiracy so that they can intelligently prepare their answer and defense - Waller v Butkovic,584 F Supp 909,931.

14) The following are some of the overt and other acts of the defendants which show how they are alleged to have participated in the conspiracy and wrongs herein which conspiracy and wrongs have been adopted  as policy and practice and represent a continuous course of conduct, discrimination and deprivation of equal protection of the laws entitling me to bring this suit pursuant to Cornwell v Robinson,supra.

### OVERT ACTS AND IMMINENT DANGER OF SERIOUS PHYSICAL INJURY

15) Defendants have contributed to,encouraged,assisted in and approved the use of contaminants,poison and cover up by open and coded language and conduct regularly engaged in between DOCS employees and inmates to further the plot to serve me con-taminated and poisoned food which has been part of this conspiracy for many years dating back to 1980 and perhaps even earlier.

16) Since my arrival at Orleans C F  on 5/29/07 I have observed countless instances of recognized coded conduct,open statements and other conduct and exchanges between inmates and staff such as lip jestures,lip tucking,placing fingers on lip and pointing to noses, nodding and use of overt language all intended to make declarations as to the food contamination conspiracy that exists and has existed for many years. The goal of the food contamination conspiracy has become to cause me serious illness and death from repeated use of small amounts of not readily detectable amounts of cleaning fluids and body fluids which conspirators have put in foods served to me on numerous

3

occasions in surreptitious manners over the years.

17) In 1999 while confined 'at the Niagara County Jail on a New York State' parole revocation warrant, blood samples were taken from me by defendants Deana Patterson (RN) and Dr  James Hohensee who were made aware through test results that I had been diagnosed as having liver damage. Patterson and Honensee neither advised me of the seriousness of liver damage nor advised me of any treatment therefor, I had no knowledge of any available treatment for the condition.

18) In August 2000 I was transferred to NYS DOCS Elmira CF where additional blood was drawn and tested. Still I was not informed of any treatment available for liver damage and received no advice from Elmira officials at all on this matter.

19) In 2001 I was transferred to Clinton CF where for the first time in Clinton CF Annex in 2002 I was informed that I had hepatitis C and liver damage by Dr  Robert Snider who offered only multi-vitamins and selenium as treatment. After obtaining brief information that further treatment might be available for the HCV/liver damage, I consulted defendant Dr Snider and requested such further treatment which he flatly refused to provide.

20) I remained at Clinton CF Main and Annex from 2001 to 2006 and was continuously denied treatment for the HCV/liver damage conditions by Dr  Snider and Dr John Doe Clintoh  CF Main and Annex.

21) At no time prior to 1999 had I been diagnosed with HCV or liver damage on the numerous occasions that blood samples taken from me were tested both in NYS DOCS prisons and at outside hospitals.

22) According to medical records currently existing, I have been diagnosed as having "granuloma" in the "lung field" according to Xrays taken in 2000 at Elmira CF and in 2007 at Orleans CF. Prior to such Xrays I had at no time been diagnosed as having any such "granuloma" in the lung field.

23) The abovesaid injuries were inflicted and/or contributed to by the repeated use of contaminants surreptitiously put in my foods over the years by conspirators herein.

24) According to a book entitled THE LIVER DISORDERS SOURCEBOOK by Dr  Howard J Worman,M D (1999),a person can develop "cirrhosis" of the liver from "toxin exposure" (pp 82-83). Dr  Worman's book at p 92 further states that"Various toxins can cause liver damage" and that "Another classic example is ingestion of carbon tetrachloride,which used to be present in cleaning fluids and can cause sudden hepatic necrosis and fulminant hepatic failure". Dr  Worman's book refers to HCV as a "silent killer"(pp 143-144,146-147)

25) Dr Worman's book further states that "Patients who have relatively high concentrations of viral (loads) RNA in the blood may be more likely to develope cirrhosis

4

than those with lower viral loads" (Id at p 150). Also, a book entitled HEPATITIS C: GET THE FACTS workbook, states that a viral load is an important blood test which is also known as PCR (Polymerase Chain Reaction) used to detect HCV RNA in the blood. Published by OAISIS, 2006, 520 27th Street, Oakland, CA 94612.

26) According to medical records of my blood tests results, my HCV RNA viral load from the 2002 blood test at Clinton Annex showed a high viral load of 1,363,200; while the 2007 test results show a higher viral load of 3,606,683 (approx 3 times higher than the 2002 Clinton test results). This injury resulted from the acts of defendant Dr Snider who flatly refused to provide any treatment for the HCV/liver damage even though a cure existed and would more likely have been successful because of the 2002 lower viral load.

27) According to accepted medical standards, persons with HCV may benefit from and be cured of the HCV by anti-viral therapy which can eliminate the virus from the body and prevent the virus from damaging the liver. The most common course of treatment is a combination therapy of pegylated interferon and ribavirin taken for up to a year. It is accepted medical standard that persons with adequate liver function and who do not have cirrhosis have greater likelihood of successful treatment with antiviral therapy. (SEE ATTACHED)

28) Both state and federal courts recognize that denial of HCV treatment may give rise to Eighth Amendment violation. McKenna v Wright, 386 F 3d 432(2d Cir 2004); Johnson v Wright, 412 F3d 398(2d Cir 2005); Domenech v Goord. 766 NYS2d 287(2003), affd 797 NYS2d 313(2005).

29) Pursuant to the conspiracy herein adopted by DOCS officials, the defendants have on numerous occasions forced me to be confined to cells to facilitate serving me with contaminated food over my numerous and repeated complaints.

30) On 9/5/07, CO Wells at Orleans CF wrote false disciplinary charges against me to further this conspiracy and adopted policy or to cause me to be beaten to death by DOCS conspirators or otherwise seriously injured and killed by conspirators. CO Wells claimed, falsely, that he saw me hand legal papers to inmate Bacote in the facility law library and that Bacote was making copies for me as payment for legal services that I was approved to give Bacote. He wrote no misbehavior report against Bacote whom he claimed made the copies and outright lied in the report by stating he saw me hand Bacote my legal papers to copy. As a result of this false report, I was found guilty by defendant Lt Oldenburg of charges of alleged misconduct and received 30 days SHU confinement on 9/14/07 which I served up to 10/14/07 and was served contaminated food by COs defendants Freeman, Wright, Clements, Landerman, Mardino, Meehan, Fortunado and Slou which I reported to medical staff including Dr Douglas who referred me to mental health and did not perform any examination of my mouth even though I informed him that I had ingested a caustic substance in the food which caused burning in my mouth and

5

throat areas. When I filed inmate grievances against Dr Douglas, he responded by making a baseless and conspiratorial statement that I was somehow experiencing "paranoid idealization" a comment which, when viewed in context of the conspiracy shown herein, evinces a feeble and malicious act of conspiracy on his part, particularly since he did not even examine my mouth and throat; and even after my release from SHU a nurse did in fact observe redness in my throat when I attended sick call because the same burning had then still persisted. Dr Douglas' baseless comment represents an attempt to give support to false and conspiratorial claims of NYS DOCS officials referred to passim this complaint to attribute some form of mental illness to me in an effort to cover up for conspirators caught red-handed trying to kill me at Attica CF when FBI officials in 1979 interviewed me and obtained mental health records then possessed by Attica mental health. DOCS has since adopted a policy and practice of conspiring, depriving me of equal protection of the laws, and trying to discredit me and their complicity in the murder plot and cover up. This complaint is not intended to set forth all of the goals and acts of conspirators committed to further the conspiracy.

31) During the Tier II disciplinary hearing, held before Lt Oldenburg, I requested as witnesses an inmate Caldwell through whom I sought to show that CO Wells acted in part out of revenge/retaliation because Calwell and I had filed inmate grievances because a request by Caldwell to have me assist him on legal matters had been denied and CO Wells on 9/4/07 called inmate Caldwell to the law library and expressed anger about the inmate grievances because CO Wells' superiors had came down on him with Wells suggesting that we should have gone through him instead of filing a grievance. Lt Oldenburg refused to allow me to call Caldwell and refused to allow me to call the inmate grievance supervisor or workers to show that Wells had been informed of the grievance by Caldwell and I.

32) Lt Oldenburg also refused to allow me to call an outside witness, D Williams, who was a former inmate that I had secured a reversal of his state conviction for and who had recently been released based on that reversal. Williams had corresponded with me in writing sending me a copy of the appellate decision reversing his case and asking me if I would assist him in preparing a lawsuit for compensation for the prison time, etc, he had done. The items had been allowed in via prison mail and were not contraband; yet CO Wells wrote me of on contraband charges and in fact searched my legal folder where he obtained the items from while having no supervisor permission to search my legal folder and papers as required by DOCS Directive 4910. This invasion of my legal file also violated my right to confidentiality of my legal papers which CO Wells read page by page and seized therefrom materials which he kept and wrote disciplinary charges on.

33) I appealed to Supt Unger and Dep Supt LaBriola and argued that CO Wells had retaliated for the filing of grievances, had acted to join a preexisting conspiracy, had singled me out for the write up, had improperly searched my legal papers without a supervisor's permission, that I was denied requested witnesses, the evidence was not

sufficient to sustain the charges, that the misbehavior report was defective for failing to separately state the charges as required under Title 7 NYCRR 251 that I was being punished for violating unpublished/unwritten rules in violation of Correction Law 138,that I was being denied equal protection of the laws and other issues as grounds for my appeal. Defendants denied all grounds for reversal of the charges and required me to serve the 30 day SHU term despite my request for reconsideration as well.

34) I also brought to the attention of defendants on my appeal that Lt Oldenburg after imposing the 30 day SHU term tried to provoke a fight or altercation with me after I informed him of my concerns of being further poisoned by contaminated food if put in SHU. Lt Oldenburg began shouting at me and stated "Tough shit. You put me through **shit**. Now you handle it." At the time of this occurrence. Lt Oldenburg had me inside his hearing office which is located in the medical building. I was the only inmate in the area and just before my hearing there had been facility announcements that all medical callouts were cancelled for that day (9/14/07). No nurses or other medical staff were present in the building. This had all appearance of a set up to attack me if I could be provoked. I remained silent and did not respond to Lt Oldenburg's attempted provocation. Defendants LaBriola and Unger did nothing despite being fully aware and informed of this misconduct of Oldenburg.

35) I informed Inspector General Richard Roy and Commissioner Brian Fisher of this matter and they,too,took no action as to it. My Orleans CF inmate grievances were also denied as to these matters.

36) The great majority of the defendants are white state actors or persons acting under color of law and they are in part acting on racial motives to deny me equal protection of the law, to further the conspiracy and adopted policy as evidenced by the continuous course of conduct and design of the conspirators who are all fully aware that I am a black man and that the FBI has uncovered evidence of a conspiracy to kill me by DOCS officials dating as far back as 1979 when I was at Attica CF.

37) In Clinton CF in 2001 I was under cell confinement in D-block by Lt Armitage and was there served contaminated/poisoned food which I became sick from and also heard inmate food servers discussing indicating that they were informed of my having become sick and that they had put too much of the contaminants in the food. All DOCS and all Clinton CF officials were aware of this conspiracy and sat by while continuous efforts to injure and kill me were being made. In 2002 I was transferred to Clinton Annex where I was first diagnosed as having HCV. In 2003,July,I was returned to Clinton Main and informed by defendant Captain Brown that I was returned to Clinton Main because my physical safety was in question. While at Clinton Main I was again confined to a cell by Lt Armitage who well knew of the conspiracy and was part of it and again I was served contaminated food in or about September 2003. I was again confined to a cell

by Lt Armitage in 2004 and forced to accept contaminated food served by order
of Armitage, Supt Artus and others who all well knew of the conspiracy to kill
me by contaminating my foods and sought to further this plot. I was again confined
to a cell at Clinton CF on July 8,2007,by CO T Charland,Lt Sawyer who authorized
a Tier III level disciplinary proceeding against me based on known false charges
of misconduct filed by T Charland; and by Hearing Officer Eggleston who found me
guilty of such charges and imposed a six month penalty (which was reversed and
modified on administrative appeal) I had engaged in no misconduct to justify the
misbehavior reports or the guilt determinations all of which was used to further
the conspiracy to confine me to cells,to injure and kill me by poisoned food,arson
or other means which had been attempted many times in the past during course of this
conspiracy and adopted policy,practice of high ranking DOCS officials. My appeals to
then Supt Artus were all denied and I was forced to serve the cell confinement terms
while defendants directed inmates to serve me with contaminated foods.

38) This conspiracy began in or about 1978-1979 at Attica CF when I requested and
was denied protective custody housing by then Supt Harold Smith who wrote me and
stated I had to provide names. Eventually I filed a civil rights complaint alleging
that Attica officials Supt Smith and Registered Nurse (RN) Francis Mills were engaged
in a conspiracy to deny me protective custody (PC) housing and to kill me to prevent
me from gaining access to the appellate court to pursue issues of misconduct against
then Niagara County Judge Charles Hannigan who had declared a mistrial to help the
prosecution retry and convict me while acting in a conspiracy with my then court
assigned counsel Michael Violante. See generally U S v Kennedy,456 US 667,674-676(1982);
U S v Dinitz,424 US 600 611-612(1976); Downum v US,372 US 734,736,83 S Ct _____ (all
prohibiting bad faith declaration of a mistrial to help the prosecution by affording
it another,more favorable opportunity to convict the accused). My civil rights com-
plaint was entitled WELCH V SMITH,ET ANO ,79-CV-280E(WDNY 1979) and was certified by
Western District Court Judge Elfvin as stating nonfrivolous claims of interference
with my right to access to the court based on Attica officials having hindered my
access to legal materials then inside my property bags which they were denying me
access to which resulted in denial of a motion for release on bail by the Appellate
Division 4th Dept in or about March 1979. Judge Elfvin issued orders in that case
that Attica officials house me in PC (protective custody).

39) On April 12,1979 a Special Agent of the FBI visited me at Attica as to my
written complaint to the FBI that a conspiracy to kill me existed at Attica. The FBI
Agent produced forms authorizing release of my prison medical and other records to
him which I signed giving him such authorization (A COPY IS ANNEXED HERETO). The FBI
Agent specifically stated he would himself inform Supt Smith of my statements in the

interview. I had also previously informed Supt Smith that certain inmates were trying to kill me and Smith stated to me in writing that I needed to provide names.

40) The mental health records obtained by the FBI Agent disclosed known false psychiatric reports by Dr Samuels of Attica stating, inter alia, that I was "most likely suffering from paranoid schizophrenia"; that my "eyes shift rapidly"; that I was "quite guarded and suspicious"; that I "find it quite anxiety provoking to deal with new and or ambiguious stimuli"; and that I was mentally ill. Dr Samuels had absolutely no factual basis for these claims and knew they were false and intended to deny me PC in an effort to have me killed by inmates. Dr Bissett and Dr Bissell also made written psychiatric reports recommending my commitment to a mental institution without any basis to believe that I was a mentally ill person. One of these two doctors did not even interview me because I informed him I would be hiring a private psychiatrist; and the other only spoke to me briefly and had no basis for recommending my commitment to a mental institution.

41) Supt Harold Smith had no basis for recommending my commitment to a menatl institution and also sought to set me up to be killed by inmates and to declare me insane. Smith instituted Correction Law 402 proceedings to have me committed to a mental institution which had been instituted prior to the FBI Agent interview.

42) In the wake of the FBI Agent interview and release of my records to him, a hearing was held before Wyoming County Supreme Court Justice John Conable who dismissed that proceeding and held the evidence was insufficient.

43) Both Dr Samuels and RN Francis Mills gave known false testimony at such hearing falsely claiming that I was delusional.

44) During a disciplinary proceeding held before Dep Supt Charles Scully at Attica in or about May 1979 defendant Scully stated he was aware of a contract against my life. I was then housed in B-West gallery of Attica 'SHU. Scully imposed loss of packages as a penalty. Upon information and belief, Judge Elfvin had issued restraining orders restraining Attica officials from confining me to third floor disciplinary SHU based on alleged events that had allegedly occurred months earlier but no charges had been filed until Attica officials determined to bring charges against me to remove me from PC and place me in disciplinary SHU to be killed.

45) In April 1979 or thereabouts I filed a complaint with Buffalo Attorney Grievance Committee against attorney Michael Violante alleging his misconduct in withdrawing as my trial counsel under fraudulent pretext to create a mistrial to attribute declaring a mistrial to the defense in order to help the prosecution whose case was going badly due to on-the-record admitted facts that prosecution's principal witness, Jean Kay, was unavailable because of vacationing in Canadian Rockies. The ADA Peter Broderick did not request a mistrial as part of the conspiracy to attribute the mistrial to the

defense. Judge Hannigan allowed Violante to withdraw and assigned two new attorneys, Joseph Carosella and Lester Sconiers,who were directed to request a mistrial,and did so request,as part of the conspiracy which Judge Hannigan granted obove my objections and request for dismissal. At my retrial in Sept 1978,two months after the July 1978 declaration of mistrial, prosecution witness Jean Kay was present and testified.

46) My assigned appellate counsel,Bernard Sax,refused to raise the double jeopardy claim and required me*- to present it alone,which I did in a pro se supplemental brief. That brief had been prepared and was the subject of my civil rights complaint in WELCH V SMITH,ET ANO ,supra,79 CV 280E(WDNY). After gaining access to the brief,I sent it out to be copied and returned by relatives; which was done. When the brief arrived at Attica package room it was returned to sender and I was transferred to Auburn CF where I was not put in PC but was put in general population where the conspiracy to have me kiled by inmates continued. After relatives brought the pro se brief to Auburn CF,I filed it in or about July 1979. The brief raised the misconduct of Judge Hannigan and Violante as well as Carosella and Sconiers.

47) Principal attorney Robert Gannon and Grievance Examiner Paul Mullen of the Buffalo Attorney Grievance Committee wrote me prior to my transfer from Attica stating that my double jeopardy issues were being presented to the Appellate Division through them and that if I was dissatisfied at the end of my appeals,to drop them a short note to that effect.

48) Despite having had these issues brought to their attention in both my pro se brief and by the Attorney Grievance Committee,the Appellate Division 4th Dept in Nov 1979 affirmed my conviction while according to information and belief attorney Violante was disciplined as was Judge Hannigan for misconduct in the matter. My efforts to have the disciplinaty action and records disclosed on this matter have been denied despite motions for disclosure under 22 NYCRR 1000.13(b) and N Y Judiciary Law Section 90 subd 10 by Justices Pine,Hayes,Wisner,Hurlbutt,& Lawton in June 2000.

49) The defendant Justices who affirmed the conviction are John H Doerr,Callahan Schnepp,Witmer & Simmons.

50) Further,defendant Judge Hannigan,according to letter correspondence from my then assigned attorney Bernard Sax to Presiding Justice Dillon,refused to release to Sax the trial transcripts to enable him to perfect the appeal resulting in affirmance of my conviction with no review of the transcripts of the trial.

51) Further,I did present transcripts of the mistrial proceedings as attachments to my pro se brief as well as to the Attorney Grievance Committee in 1979 which were sufficient to enable a determination of my double jeopardy claim though no transcript of the trial was before the appellate division.

52) Further,the appellate division,defendant Doerr, denied my motion for release on bail pending appeal despite being aware that a substantial double jeopardy claim

was being made and existed and that highly unusual circumstances of former Judge Hannigan's refusal to release the transcripts existed.

**53)** In 1983 I submitted a motion to the Appellate Division Justices and the Clerk of the Court returned my motion informing me that the Justices of the Court stated that no records of my case and appeal existed and that there is nothing in any of the court records as to my claims of a double jeopardy violation despite my having filed a pro se brief and transcripts and despite the submissions by the attorney grievance committee. My motion papers sought disclosure of the records and misconduct findings as to Violante and Hannigan.

54) During the period from 1979 (Nov ) to 1982 I was held at Clinton CF under threat of death by DOCS officials and conspirators who communicated to me that if I complained to authorities I would be killed by arson, stabbing, poisoning or any means necessary. Clinton CF officials in 1979 declared a false emergency and directed inmates to serve me with contaminated/poisoned foods. I was held in E-block and then moved by force to APPU lower H block where I was unable to leave the cell or participate in any activity because DOCS and conspirators were prepared to kill me and to attribute it to inmates while my food was poisoned and contaminated with cleaning fluids and body fluids on a daily basis. I became physically ill with stiffness and pain and also became emaciated and thin with my weight going down to below 160 pounds. I was transferred from Clinton CF to Great Meadow CF in early 1982 wherefrom I was committed to Marcy Central New York Psychiatric Center (CNYPC) by defendant Judge Moynihan who committed me without assigning an attorney and despite my silence when brought before him in 1982 , Judge Moynihan joined in the conspiracy with DOCS officials.

55) Clinton officials and DOCS had fabricated a lengthy mental health record against me which attributed mental illness to me without any basis in fact. Dr Reyes, Dr Phil, Dr Edwards, Dr John Doe(psychologist) all regularly placed me on callouts and had officials bring me to their offices or visited me at my cell locations to further the goals of this conspiracy. They documented in their records known false claims that I was a mentally ill person and also attributed to me a known false claim of being a homosexual all with no basis in fact for the claims and to further the goals of contaminating my foods and to kill me and attribute it to inmates. Such conspiracy has been ongoing for many years and is documented with DOCS officials who are the origin thereof.

56) On one occasion at Great Meadow CF while in a mental observation cell in a mental health unit, I asked CO Squeezy (phonetic) for food and he responded saying: "I'll put vaselinbe on my d--k and let you suck it off." This was without any provocation by me and evidences the conspiratorial nature of the food poison/contamination plot involved.

11

57) On another occasion at Clinton CF while in APPU in 1982 and being packed up for transfer to Great Meadow CF, CO Robin Stein began abusing my personal photos and called me a "scuzzy c---sucker" without provocation or justification in an effort to provoke me to a fight though he was not successful.

58) On numerous occasions at Clinton CF mental health officials and DOCS employees asked me questions designed to provoke me into action because of the insulting nature of them. These include Dr  Reyes who once called me a "catatonic" without any basis in fact; Dr Phil who repeatedly tried to get me to talk to him in efforts to lie and twist the interpretation of my statements which I understood to be one of the goals of the conspirators; Dr John Doe and Dr  Edwards likewise tried to engage me in conversation and tried to get me to cooperate with their efforts to place me in mental health units as part of this conspiracy and policy of DOCS. On numerous occasions I was taken to mental health units by COs such as at Clinton,Great Meadow,Attica CFs and when I did not cooperate on many occasions I was written up on bogus disciplinary charges for in essence not cooperating with DOCS officials efforts to set me up  to  be killed. The following are names of DOCS officials and dates of write ups at various facilities written as part of this conspiracy and adopted policy of DOCS based on my failure' to cooperate with callout movements as the only means to protect my life and physical health against DOCS and coconspirators who sought to kill me if I cooperated:

i) CO Kenneth Bump,Great Meadow CF,dated 9/21/82
ii) Corr Counselor Thompson,Sgt Race,Dep Supt Security Eisenschmidt, Great Meadow CF,dated 7/9/82,9?1/82
iii) CO Sokol,dated 9/20/82,Great Meadow CF
iv)  Lt  John Doe,Adjustment Committee,dated 9/18/82,Great Meadow CF
v)  CO N  Sokol,Sgt John Doe,Great Meadow CF,dated 9/23/82
vi) C A Taylor,Lt  ,dated 10/22/82,Great Meadow CF
vii) B Bailey,Hearing Officer,dated 10/1/82,Great Meadow CF
viii) CO T E Matteson,W Perez,Great Meadow CF,dated 5/21/82
ix) CO Thayer,Great Meadow CF,dated 6/29/82
x)  Corr  Counselor R  Raymonds,Great Meadow CF,dated 5/13/82
xi) 3/19/80 Emergency Referral to Mental Hygiene Dept  by K Kavanaugh,Lt Clinton CF
xii) Judith Burhah,RN ,Mental Hygiene Nurse,Paulette Hale,RN,Nurse II, Clitnon CF,dated 11/19/79
xiii) COs David Malark,Terry Aubin,M Balire,Clinton CF dated 11/16/79
xiv)  CO Brown,Clinton CF,dated 12/16/79
xv)  COs James E Facteau,Turner,Clinton CF,dated 1/10/82
xvi)  CO Will Eleeh,Clinton CF,dated 3/18/80
xvii) Hearing Officer D A McJuire,CO R  Fountain,CO LaFountain,CO LaBoue Clinton CF dated 8/22/83 and 8/24/83
xviii) CO S  DuBrey,Dr Reyes,CO Durkee,Sgt Winch,Clinton CF,dated 3/28/80
xix) COs D  Pescia,D  Juneau,W H Drollette,W Dashnaw,Sgt A Gratto,Sgt Colon Lt  McCasland, Acting Dep Supt Security J W Curran,Clinton CF,dated 11/29/79
xx) Idoho J Kihl,Hearing Officer,Lt  E S Malenski,CO R  Fraser,Attica CF, dated 7/18/90,7/23/90 (also Lt  LeBaron,D )& COs Burkurd,K,& W Fukis)

xxi) CO Dickson,LT  Renneditti(PHONETICS) Clinton CF,dated 3/17/80 and COs R Roberts,O  Dibyih

xxii) Hearing Officer R Burdell Bailey,COs Sokol,K  Bump,D Hillbourne,Great Meadow CF,dated 9/20-21/82, 10/1/82

xxiii) CO Jorgensen Great Meadow,CF,dated 5/18/82

xxiv) DSgt  Copeland,CO Quakenbush,Great Meadow CF,dated 11/11/82

xxv) CO Blaise,R H  Bube,Great Meadow CF,dated 10/26/82

xxvi) CO Sokol,William E Donaldson,Great MEadow CF,dated.10/21/82,9/17/82

xxv) Captain Curran,CO D Pescia,Clinton CF,dated 12/3/79,12/14/79

xxvi) Lt  W J Rivers, Corr  Counselor Welch,CO Newell,CLINTON CF,dated 10/5/91, and CO Kriplin  10/4/81

xxvii) CO G  Goldsmith,CO M F  Blaise,Great Meadow CF,11/1/82

xxviii) Dep SUpt  Security Hans Walker,COs Ahearn dated 3/12/86

xxix) Lt  Way,CO Canning,Clinton CF,dated 4/14/84,4/24/84

xxx) Lt Henneberg,CO Chilain(PHONETICS) Attica CF,dated 8/15/85,8/21/85

xxxi) CO Frank Meglany (PHONETICS),Great Meadow CF,dated 5/24/82

xxxii) Lt James,CO K  Horvatits,CO Witkowski,CO Couglin,CO Tompororski,CO Countermink; Attica CF, 10/14/90

xxxiii) CO Sokol,CO D Hellburue,Great Meadow CF,dated 9/24/82

xxxiv) CO J W Griffith,Supt  E W Jones, Adjustment Committee,Great Meadow CF, dated 11/12/82

xxxv) CO M Blaise ,Great Meadow CF,dated 12/6/82

xxxvi) CO E Dickson,Clinton CF,dated 3/14/80

xxxvii) CO H  Duster, Great Meadow CF,dated 11/29/82

xxxviii) CO Turner,CO Factaeu,Clinton CF,dated 1/10/82

xxxix) CO Frenyea,Clinton CF,dated 12/9/79

59) The above reports,and others,were written as constituent parts of a conspiracy to kill me and to defraud the federal government and FBI who the writers and DOCS well knew would be investigating if they accomplished my intended death. I was under death threat by DOCS and coconspirators and could not defend myself by appeals,objections, etc ,becaUSe conspirators sought to use such against me to further their murder plot. DOCS officials had PC orders from federal Judge Elfvin and had adopted a policy to conspire to disobey same and to prepare fraudulent defenses to their intended murder of me while holding me captive under death threat if I complained. I was regularly served contaminated foods during these and other periods as part of the continuing efforts to injure and kill me while conspirators left me no other means of survival. I am currently suffering from the sustained injury of HCV and liver damage and signs of cancer in my lungs from this conspiracy and adopted policy to discredit it and DOCS's complicity in it. I was regularly referred to mental health officials who as  partners in the conspiracy fabricated mental illnesses against me knowing full well of the conspiracy and themselves also being members of the conspiracy seeking to discredit the same.

60) DOCS officials at each facility acted under their adopted policy  to conspire to kill me and directed inmates to serve me with contaminated/poisoned food and at times staff served such contaminated foods themselves while officials had me under watch from outside watch towers while they feigned investigations of their own con-

spiracy using tape recordings which they documented in some of their written reports as they awaited seeking the chance to kill me and fabricate defenses to their intended murder of me.

61) On many occasions, inmates and staff made open declarations that they were contaminating foods served to me, such as the declarations made by CO§ Robin Stein and Squeezy referred to at paragraphs 56, 57, 58, etc. and many others not set forth herein.

62) As far back as 1979 while at Attica CF I was interviewed by an investigator John Doe from the Albany Inspector General's office who I observed writing a report as I spoke to him but deliberately not documenting specified threats against my life that I informed him of at that time. When I brought this omission to his attention, he then stated he had thought he wrote it in. In fact, he had only written that I was not comfortable in the Attica CF SHU and other comments such as my opposition to transfer to other facilities at that time.

63) Following the IG investigator interview stated at paragraph 62, I heard CO Schiltz tell other officers to "Get the tapes" apparently referring to tapes being used in the murder conspiracy. On one occasion CO Schiltz in the presence of then Sgt Henneberg assaulted me by slapping me in an effort to provoke a fight to kill me while I housed at B-West SHU in Attica CF in 1979. CO Schiltz and Sgt Henneberg were some of the core conspirators involved in daily efforts to kill me at Attica CF at the time Judge Elfvin issued restraining orders and ordered me housed in PC in 1979.

64) Despite the substantial evidence of the existence of a food poisoning/contamination conspiracy and conspiracy to kill me and defraud the federal government as well, the following DOCS officials have gone on record claiming investigations and nonexistence of such conspiracy; or lack of evidence thereof:

   i) Lucien J Leclaire, Jr Deputy Commissioner, NYS DOCS dated 2/28/07

   ii) Supt Justin Taylor, Gouverneur, 2006

   iii) Supt Dale Artos, Clinton CF, 2005-2006

   iv) Donald Selsky, Director Inmate Discipline/SHU, 2006

   v) Sgt Duquette, Clinton CF, 2006

   vi) T Charland, CO, Clinton CF, 2006

   vii) L Turner, J Tedford, Dep Supt , Clinton CF, 2006

   viii) Glenn S Goord, Commissioner, NYS DOCS, 2006

   ix) Supt Graham Auburn CF, 2006

   x) Supt David Unger, Orleans CF, 2007

   xi) Former Supt Eisenschmidt, Dep Supt Security and other officials at
       Five Points CF in 2000-2001

Other high echelon DOCS officials have also claimed no conspiracy exists while knowing such claims to be untrue.

65) Further,not only have conspirators declared they were contaminating/poisoning foods served to me at times in the past as far back as 1980 and as recent as 2007,but I have previously observed human body fluids on foods served to me in the past and have also been seriously injured by the repeated,surreptitious contamination of food served to me. The current existence and continuation of such acts of conspiracy render me in imminent danger of serious physical injury or death.

66) Niagara County officials,like DOCS officials, have adopted a policy and practice which is being and has been used to cloak their acts of conspiracy,discrimination and denial to me of equal protection of the laws. For example,in 1996 I was first released on parole supervision after serving approx  20 years on a robbery conviction under indictments 5946 & 5946A wherein the double jeopardy violation occurred as set forth supra, at paragraphs  38  to 53   . Within some 70 days after my 4/25/96 release,I was arrested on 7/5/96 by Niagara Falls City Detectives Jim Galie,John Galie,Pat Stack and Mark Martinez,who all acted in concert to arrest me without probable cause or any basis in fact to support my arrest while Jim Galie bragged in the presence of the others that he was going to falsely swear in court that he saw me throw drugs in Prices bar. A Niagara County Grand Jury returned an indictment against me which was dismissed by former Judge Hannigan who was fully aware of the conspiracy and a core member of it; despite such dismissal,Judge Hannigan allowed the same false claims and illegal arrest without probable cause to be used by NYS Division of Parole to revoke my parole and return me to  prison for two years from 7/5/96 to 7/15/98. Judge Hannigan dismissed a state habeas corpus petition brought by me to restrain the Division of Parole from revoking my parole and falsely claimed he lacked jurisdiction despite well established authority to grant habeas corpus relief and restore me to parole supervision  See,e g People ex rel  Caldwell v NYS Division of Parole,123 AD2d 458,506 NYS2d 761(2d Dept 1986); People ex rel  Robertson v NYS Div  of Parole,67 NY2d 197,501 NYS2d 634(1986) (both authority for proposition that where no criminal case is pending the court must conduct a Mapp hearing to determine an illegal seach and seizure claim).In fact,under New York's CPLR 7003(c),Judge hannigan is subject to forfeiture of one thousand dollars to me for violating the mandatory procedures requiring issuance of the writ of habeas corpus. Judge Hannigan also ruled that doctrines of res judicata and collateral estoppel did not bar the parole revocation proceedings despite his dismissal of the indictment on legally insufficient evidence grounds. I served two years on this parole revocation which was ordered by Hearing Officer Judith Cummins.

67) When restored to parole supervision in July 1998, I was thereafter arrested on March 3 1999. when Niagara County Sheriff Investigators Peter Cocco,William Evans,Mike Messina  Mark Dreiss and two of the Niagara Falls City Detectives (Det Paul Pierini and John Galie who were also involved in my previous arrest of 7/5/96,supra) who were involved

in the events referred to at paragraph 66 supra executed a search warrant on my residence that was issued by Niagara Falls City Judge Mark Violante, brother of core conspirator attorney Michael Violante referred to at paragraphs 38-53 supra. The search warrant was issued without probable cause in that Judge Violante did not interview/examine five out of six informants purportedly set forth in the warrant application and instead purports to have interviewed one of six informants while not even determining the existence of the remaining five alleged informants. It appears that the claims of the warrant affiants (Inv Cocco & Inv Evans) that drug sales were made from my residence by me to alleged informants (CIs) were fabricated as part of the conspiracy which is evidenced by the fact that at a pretrial suppression hearing Inv Cocco testified that there were only three CIs involved and that he had not known any of them to be reliable whereas he swore under oath in the warrant affidavit that six informants were involved and that they were reliable. This testimony combined with other facts and circumstances such as the fact that the warrant and application contain facially perjurious statement alleging that I had "BLACK HAIR" when in fact, I at all times wore a bald/shaved head and if my hair was grown in it would be grey with an obvious receded hairline and male pattern baldness which the warrant and application wholly fail to mention. The suppression hearing testimony establishing these facts went uncontradicted ; the warrant application also stated no basis of knowledge for the claims of CIs that Elbert Welch lived at the addresses named therein, had moved from one address to another, and that the CIs even knew Elbert Welch at all. In addition there was a Clarion Hotel receipt possessed by the prosecuting authorities which showed that on  2/9/99 the date alleged as the day of a drug sale by me to CI "TP10" from a 7th Street residence I resided at the Clarion Hotel and not the 7th Strewet residence. These and other facts and circumstances sufficiently controverted the allegations of the warrant application as to render it defective. Judge Violante, brother of attorney Violante, merely rubber stamped the warrant application and  deliberately abdicated his duty to determine if probable cause existed to permit issuance of the search warrant acting under the influence and knowledge of the within conspiracy which he became a member of by such actions.

68) I was prosecuted and imprisoned under a 7 to 21 year prison term by Acting Niagara County Judge James Punch and Assistant District Attorney(ADA) Claude Jeorg who were fully aware that the illegalities referred to in paragraph 67 had occurred. Judge Punch and ADA Jeorg also had extrajudicial contact with FBI authorities as to the conspiracy which was being investigated by FBI authorities. Punch and ADA Jeorg both were requested to recuse themselves in a pretrial motion and both responded by conceding the uncontradicted facts of their FBI contacts but claiming they were not engaging in improper conduct or were not conspirators and were acting fairly and within the limits of the law. Both Punch and Jeorg refused to recuse themselves

69) In a second case involving NYS Police Investigators Jimmy Phelps,Brenda Roberts, Talford. Colon. Calloway and Niagara Falls City Detectives Paul Pierini,John Galie, Det Lt Moms. the New York State Police joined this conspiracy and wholly fabricated a claim that on Feb 5.1999. I made a drug sale to Inv Jimmie Phelps from a 7th Street residence. Phelps,Pierini and others appeared before a Niagara County Grand Jury and gave known false testimony as to this fabricated drug sale claim and secured an indict- ment on March 4.1999,which I was also prosecuted on and received a consecutive 7 to 21 year sentence on on July 17.2000.by Judge Punch and ADA Jeorg,both of whom well knew that this drug sale claim was fabricated. In fact. they conceded such facts in their responses to my recusal motion which set forth this as part of the basis for the recusal motion and stated that Judge Punch and ADA Jeorg were aware of the known false claims against me by these conspirators. They did not dispute their awareness of the false claims and did not dispute their contact with FBI officials who were investigating the conspiracy. Both Punch and Jeorg also refused to allow me to present evidence of the FBI investigation results and my claims that FBI officials had investigated and con- firmed the existence of the conspiracy. Neither Judge Punch nor ADA Jeorg denied that they were purporting to cooperate with FBI authorities who were investigating the conspiracy; Judge Punch merely claimed he was not acting in cooperation with the U S Attorney's office while ADA Jeorg claimed he was not involved in a conspiracy to harm or illegally imprison me. Both ADA Jeorg and Judge Punch well knew they were members of the conspiracy and targets of the FBI investigation prior to the bringing of the indictments and drug charges against me hence should have recused themselves as I requested in my recusal affidavit and CPL 440.10 motions which were not controverted by them as to the material facts alleged herein hence deemed a concession by them as to the uncontradicted facts since under New York law "normally what is not disputed is deemed to be conceded" People v Gruden.42 NY2d 214.216(1977);People v Wright,86 NY2d 591,635 NYS2d 136(1995);People v Van Wie,238 AD2d 876,877,661 NYS2d 112(4th Dept)

70) Both ADA Jeorg and Judge Punch feigned cooperation with FBI officials while they pursued the goals of the conspiracy herein by illegally imprisoning me ffi efforts to have me killed.

71) The Supreme Court has held that a single- municipal decision by a municipal's policymaker can under certain circumstances constitute a "policy"Pembaur -v City of Cincinnati,475 US 469,480,106 S Ct 1292,1298-1299(1986).Both Judge Punch and ADA Jeorg had the requisite "final authority to establish municipal policy with respect to the action ordered",Pembaur,supra,at 481,106 S Ct,at 1299; and made a "deliberate choice to follow a course of action.'. .from among various alternatives" Id.Niagara County Judge Hannigan also had such policymaking authority and made a deliberate choice to refuse to entertain my habeas corpus challenge to revocation of my parole in 1996;

and to create and pursue a conspiracy to kill me and deprive me of equal protection
of the laws and other constitutional rights as set forth herein while also using his
power as county judge to influence other county,local and state officials to join the
conspiracy.

72)The acts of the defendant judges herein are not adjudicatory hence not protected
by absolute immunity. Forrester v White,484 US 219,227,229(1988).The acts of the defen-
dant prosecutors are not protected by absolute immunity since they are not prosecutorial
functions or are at best may be investigatory. Smith v Garretto,147 F3d 91,94(2d Cir1998)
Allen v Lowder,875 F2d 82,85-86(4th Cir1989);Gabbett v Conn,131 F 3d 793(9th Cir 1997)
The defendant judges and prosecutors herein were members of the conspiracy at all points
and times and are liable for their non-judicial and non-prosecutorial acts.

73) The Supreme Court has held that a claim for exposure to environmental tobacco
smoke states a cause of action for Eighth Amendment purposes even though the inmate is
asymptomatic because the health risk posed by second hand smoke exposure was "sufficient-
ly imminent" Helling v McKinney,509 US 24,34,113 S Ct 2475,2481(1993). A prison inmate
could also successfully complain about demonstrably unsafe drinking water without await-
ing for an attack of dysentery. Id "Inmates  ought to be able to complain about''unsafe,
life threatening conditions in their prison" Gibbs v Cross,160 F 3d⁵ 962,965(3d Cir
1998)(SEE PARAGRAPHS ²3-31 ET SEQ  SUPRA).

74) On June 2,1997, I was informed by Niagara County Jail officials that I was be-
ing transferred to NYS DOCS facility relative to my 7/5/96 arrest which had resulted in
dismissal of drug charges by Judge Hannigan but revocation of my parole as set forth in
paragraph 66 supra. I requested to have the FBI contacted because of threats and danger
to my life in DOCS facilities. A jail captain,Capt Payne,was summoned and told by me
of my request and he refused to even hear me and sadistically ordered security officers
with mace to use force to remove me from a cell. I informed the security officers,
FOUR UNKNOWN NAMED JOHN DOE OFFICERS OF NIAGARA COUNTY JAIL,that I would walk coopera-
tively but they ordered me to get on the floor under threats of mace and violence,to
which I complied; I was then handcuffed behind my back while laying face down on the
floor,had a chest belt tightly put around my chest,my legs were tied with a belt,and
I was picked up and carried by straps in a prone stretcher-like position where I was
dressed and transferred to Wende CF. Capt Payne Sgt  Stickney,then Supt  Clark stood
by watching this sadistic use of force and infliction of unnecessary pain and suffering
on me and did nothing to prevent or stop it. A CO Payne of Niagara County Jail on
subsequent occasion made comments to me in 1999-2000 that "I could have sworn I saw
you on the- floor gagging" while speaking sarcastically of this 6/2/97 incident.

75) Within months after the revocation of my parole in 2000 I was transferred to
Five Points CF where I was confined to SHU on known fabricated disciplinary charges

resulting from a known false misbehavior report by Sgt Jastrzab alleging unauthorized exchange of property which charge was allegedly based on third party allegations of a person who did not endorse the misbehavior report. The third party's claim was a total fabrication and the misbehavior report was used to confine me to SHU while Five Points CF officials.Supt Eisenschmidt.Dep Sup Security.Hearing Officer Zen Zen and others concealed from me their claim of knowledge that I was in danger of being attacked in general population. Hearing Officer Zen Zen found me guilty and implied that I was in danger though not specifically stating so; and SHU Director Donald Selsky affirmed this guilt finding but modified the penalty. When the penalty was served, I refused to return to general population and requested protective custody housing (PC) which was denied by Dep Supt Security.Supt Eisenschmidt and a female interviewer despite my having informed them that I was a federal witness and crime victim and their prior knowledge of such facts and their own claim of danger to me at Five Points. I was transferred to Clinton CF in Jan-Feb 2001 after serving additional SHU time at Five Points CF which was imposed by Dep Supt Micaelis who held a hearing and found me guilty on charges of refusing a direct order to return to general population. These act of using known false disciplinary charges to confine me to SHU while concealing a claim that I was in danger (which I learned from inmates while in SHU and subsequent thereto) and imposition of penalty on me evince at least deliberate indifference to my safety and denial of equal protection of the laws.

76) On my arrival at Clinton CF I was given the following keeplock (KL) loss of packages (pkgs) loss of commissary(comm) by the following defendants despite their awareness of the food poisoning/contamination conspiracy against me: Tier 2 hearing by Lt- Armitage on report of CO Harnden.30 days KL loss of Pkgs.Comm from 4/18/01 to 5/18/01; Tier II hearing by Lt Baldwin on report by CO S Bemware.30 days KL loss of Pkgs, Comm from 5/24/01 to 6/23/01; Tier II by Lt T LaValley on report of CO C LaBonte.30 days loss of recreation phones,earphones from 6/28/01 to 7/28/01; Tier II by Lt Armitage on report of CO J Spear.30 days KL loss of Pkgs Comm from 7/28/01 to 8/27/01,8/10/01; Tier II by Lt Armitage on report of CO K Charland,6 days KL loss of Pkgs,Comm,Phones for 15 days; Tier II by Lt Armitage on report of CO Bezio.30 days loss of Pkgs,KL,Comm from 6/30/04 to 7/30/04 (The last three Tier II decisions were appealed and affirmed by Capt LaValley on 9/18/03, 7/7/04 and Capt J Carey on 7/19/01. These defendants knew of the conspiracy to poison/contaminate my food and yet deprived me of access to commissary and packages to further such conspiracy and to deny me equal protection of the laws.

77) DOCS officials have a history of either "themselves depriving me of personal property such as cigarettes that I use to barter for food with other inmates or setting me up to have other inmates steal my property to further their conspiracy to force me to rely on DOCS and conspirators for food. For example, when I was transferred from Gouverneur CF SHU to Auburn CF in 2006 COs T M Stone (who packed my property for transfer)

with involvement of Supt  Justin Taylor and others who I complained to and requested  to
investigate and correct this situation, did not transfer bags of my property with me
which contained 22 packs of cigarettes,my personal beard trimmers and all of my personal
clothing items. Supt Taylor⁻ failed to correct this situation when I filed complaints
with him. Again,recently at Orleans CF, when I was put in SHU as set forth at paragraphs
30-35 et seq  CO Ambrose who had obtained my combinations to my combination locks,allowed
inmates to steal items of my personal property and a total of 9 pack of Newport cigarettes
used by me to exchange for food items (I DO NOT SMOKE CIGARETTES AND ONLY USE THEM TO
EXCHANGE FOR FOOD WITH OTHER INMATES)were missing from my property and again my beard
trimmers were deliberately broken and damaged which I discovered ''ᵀafter my release from
SHU in Oct 2007.

78) CO Ambrose is an officer who had previously engaged in acts of conspiracy against
me such as posting a document on E-2 dorm window which referred to me as "PIG STY" in
a manner that was available for all dorm inmates to view with the purported intent to
call me a snitch or informant to  endanger my welfare; Ambrose  actions occurred on
or about 8/1 1/07 which was the day after I had filed a grievance and had a hearing on
a previous complaint concerning threats he made to confine me to SHU without any provoca-
tion or misconduct by me.

79) Subsequent to the events in paragraph 78,supra,CO Ambrose appeared to be making
false claims as a prelude to writing false disciplinary charges against me when he
falsely accused me of ''watching'' him lately and stated to me that when I file a grievance
this time,spell his name right: it has a "b" in it,he stated; I filed a complaint as to
this incident as well which was investigated by Sgt  Warne who interviewed me and said
that Ambrose stated I had been staring at him and that other inmates and staff also made
similar allegations. I informed Sgt Warne that I had not at any time stared at Ambrose
and that I also had pending lawsuits concerning inmates and DOCS conspiring against me.
Sgt Warne made statements to the effect that⁻ he was not afraid of my lawsuits; and I
appropriately informed him that that was not my intention to intimidate him and that I
was attempting to show background information relevant to any claims of inmates and
staff that were false and conspiratorial. Sgt Warne concluded by stating that⁻ he had
informed Ambrose that if I stare at him again (though no staring ever occurred) to
write me up on disciplinary charges.

80) Though Ambrose did not write me up,he is the officer that packed my property on
9/14/07 when I was put in SHU and is responsible for the theft and damage to my property
which were retaliatory acts and which were done in response to my complaints/grievances
against him as well as to further the goals of the conspiracy and to deny me equal
protection of the laws.

81) I have been subjected to a series of repeated assaults and physical abuses by DOCS officials in efforts to provoke me into a physical fight °to kill me which has been one of the modi operendi used by conspirators for many years: e.g., while in SHU at Orleans CF from 9/14/07 to 10/14/07 CO Freeman physically abused me by grabbing and shoving me unnecessarily when escorting me to recreation; at Clinton CF in 1979 I was converged on by COs Pescia and others who removed me from a cell and took me to SHU-14 where I was punched kicked and put in a cell without provocation; at Clinton CF during 1979-1980 I was regularly removed from cells by COs Lavarnway, Sgts. and others and during such escorts was at times physically abused by COs; at Great Meadow CF in 1982-1983 I was physically abused by COs Doug Williams and Bump; at Attica CF in 1985 to 1990 I was repeatedly physically abused by COs Stranahan, Czerniak, Ahearn and others and in 1985 CO Ahearn and others rushed me in a cell and began punching me and knocking me down and put handcuffs on me and escorted me to SHU in the presence of Capt O'Connor, Lt Wolfe and others who stood by and did nothing but watch while fully aware that I had not provoked this action; at Mohawk CF on or about 7/18/97 I was in the facility law library when a riot broke out in the yard which made it obvious that myself and 60 other inmates were non-participants in the riot and yet I was handcuffed and held in a gym area overnight while being made to sit on the floor by Sgt Hund, CO Albright Inspector General Investigator Denbik and riot officer number 75 who all knew it was undisputed that I was not a participant in the riot--I was refused treatment for a pre-existing condition of high blood pressure during this period despite my repeated complaints to medical staff Inspector Denbik and others on the scene of the riot which was not related to me; COs Bartell and Plumly tried to provoke me into a fight in July 1997 prior to the riot at Mohawk CF by abusing my legal property by removing all of my papers from the folders and leaving them in total disarray despite my polite request of them not to do so; in Sept-2005 at Clinton CF, Capt Brown ordered COs Fitzgerald, Brown, Durocher and others to confiscate all of my legal property and to allow me to have only six bags of property thus requiring me to mail out some 9 bags of legal materials in Sept 2005 despite my then pending numerous habeas corpus challenges to two convictions, civil- rights lawsuits and other ongoing matters--the COs allowed me to select only some items needed for my ongoing and contemplated litigations and arbitrarily selected items of property for me to keep despite my repeated complaints, grievances, etc, which also brought this to the attention of Supt Dale Artus who did nothing to rectify the matter; when I was in SHU at Orleans CF during 9/14/07 to 10/14/07 CO Fortunado informed me that Capt Hollender and Lt Tamiel ordered him to require me to dispose of all legal property except one bag--CO Fortunado required me to mail out 3½ bags of legal papers and only allowed me to keep 1½ bags even though I informed him* that I have over ten separate legal litigations pending and others

21

that I was preparing to file such as the instant case and others recently filed in both
state and federal courts and that I needed the case law materials and other documents
to assist me in preparing and prosecuting my litigations—my inmate grievances were all
denied on this issue; after my release from SHU at Orleans while picking up legal mail,
CO Wilson stated to me "Big Harry Welch is dead" and then stated "You smell dead"—my
inmate grievances on this issue were denied; on 1/26/07 when I arrived at Coxsackie CF
while in reception,CO Hobart (I) stated to be while out of my cell for a nurse interview,
"Stupid ass Get a pen" to which I filed a complaint with Supt  Isreal Rivera,was later
interviewed by a Sgt  on the complaint,and CO Hobart (I) again engaged in misconduct by
throwing my legal mail on the floor of the cell after I signed for it and he stated
"HERE YOUR HIGHNESS"; CO Hobart (I) at a later date again threw legal mail on the floor
after I signed for it and stated "See,not a word from him" which occurred after I had
been interviewed by the Sgt ; CO Hobart(I) had a coworker who stated to me on one day
that CO Hobart (I) has a lot of family that works for DOCS and that I would not do a
good bid writing "snitch notes" against Hobart(I) and that there are other ways to handle
the matter; subsequently I was moved to B-block where a CO Hobart(II) was the regular
company officer and was,according to information I received,the brother of Hobart(I)--
on one day when issuing shaving razors Hobart (II) stated to me"This is Alice's Res-
taurant" and that "You can have anything you want but you can't have Alice"(This was
a direct reference to the death of my sister,Alice Pryor,who died while in a coma in
2003 under suspicious circumstances which have been investigated by FBI officials and
is believed to have been a homicide committed in furtherance of the within conspiracy
which CO Hobart(II) indicates  his own complicity  in while making braggadocio remarks
also intended to provoke me into disciplinary action though unsuccessful in doing so.
These are only intended to set forth some of the salient facts and events,not a full
or complete listing of them, which show continued threats,physical abuse,assault and
overt acts of conspiracy to further the goals of the conspiracy and adopted policy
and practice of DOCS and coconspirators.

82) As far back as 1979 at Clinton CF and at Great Meadow CF during 1982-1983 the
conspirators communicated their intent and plans to kill members of my family to get
revenge against me for having caused defendants Violante and Hannigan to be reprimanded
and/or disciplined and for having caused the FBI investigation of DOCS officials.The
conspirators developed coded means of communicating threats and declarations as to
their plans and intent. Some,but not all,of the coded language are: use of term "all
of yous" or "everyone" or "everybody" or reference to the "Amityville" murders which
involved the murder of a family(and many other terms) intended by DOCS and coconspira-
tors to convey intent and plans and threats to kill me and my family members; use of
numbers "5" or "25" to refer to my former 325 Memorial Prkwy,Niagara Falls,N Y home
address and wife to convey similar threats; use of terms "8 track" to refer to plans

to track the whereabouts of my son by his school records who was then 8 years old; the use of terms such as "tapioca" to refer to the tapping of my home phone by Judge Hannigan and others who were then high ranking Niagara County officials. Conspirators often conveyed the daily activities of my wife and son.

83) By document dated 3/19/80 Lt. Kavanaugh of Clinton CF made a known false declaration of an emergency as did then Supt E S LeFevre and other supervisors at Clinton CF and Albany DOCS and referred me to mental health falsely stating, inter alia, that I then thought that all other inmates were after me, that I did not want any contact with inmates or employees, that I was completely withdrawn from all activities when, in fact, DOCS and Clinton officials were pursuing me to kill me and sought to use my involvement in any activities as part of the basis for their defense to murdering me.

84) As one written report by Dr Donald Schmid (Psychologist II) of Attica CF dated February 27, 1979, frankly conceded I was then "impressed as being well oriented and in good contact"; "did not present any overt psychotic manifestations"; and "readily admitted he set fires and more recently physically abused himself both as a means to insure his getting out of" a housing location; and that "At this time he is considered to be a malingerer". Dr Schmid therefore discharged me back to general population at that time despite my request for PC housing thereby evincing at least deliberate indifference to my safety.

85) When committed to Marcy CNYPC under the known false declaration of an emergency referred to at paragraphs 54, 55, supra, and 83, supra, I was forcibly injected with psychiatric drugs which I was told were haldol and demerol for weeks despite my request to Dr Sue to discontinue the drugs. She threatened to increase them claiming that I would not talk. On several occasions I had severe side effects that are known as "acute dystonia" with symptoms of severe involuntary spasms of the upper body, tongue, throat, eyes and was rendered dysfunctional for substantial periods exceeding an hour each time. I was put in a side room by treatment assistants (TA) and given an antidote pill while I lay on a floor to recover. This was a substantial interference with my liberty and was unnecessary since I posed no danger to myself or others and clearly was not mentally ill. Washington v Harper, 494 US____, 110 S Ct 1028(1990); Cruzan v Director Missouri Dept of Health, 497 US____, 110 S Ct 2841(1990)

86) I was again subjected to nonconsensual injection of anti-psychotic drugs into my body at Great Meadow CF after my return there from Marcy CNYPC by Dr Foote, Dr Glennon, Dr Koock Jung and Nurse Yule who used fraud and trickery to inject me with "prolixin" on a periodical basis while telling me this was medication for a blood circulation blockage that Dr Foote and Dr Glennon were treating me for. According to records that I became aware of years later, in 2000 during subpoena process in a criminal case, Dr Koock Jung had secretly ordered me injected with "prolixin" and made a written mental health document dated 12/16/82 documenting his actions while not informing me

23

and not having my consent for his actions.

87) Dr Jung's 12/16/82 report claims that he was requested by defendant Dr Glennon to see me and that when he attempted to interview me,I was mute and uncooperative as I had been for "the past several years". Jung then refers to documents about my alleged "psychotic behavior,delusions in 1979" (apparently adopting and referring to documents generated by Dr Samuels and other at Attica CF in 1979); Jung then states "there was a couple mentions about his paranoid delusion that people are going to kill.He was excited, fearful,and apprehensive". Jung refers to me as having "paranoid psychotic symptomatology" that "was bearing problems in 1979 and 1980" and concluded by ordering injection of "prolixin Deconate" 25 mgs every two weeks. All of such action was part of the same design and conspiracy to kill⁻ me  from Attica CF officials and was an attempt to cover up by killing me to eliminate me as a witness. This continues to be one of the goals of conspirators as evidenced by the baseless statements recently made by Dr Douglas set forth at paragraph 30,supra,baselessly  referring to my food poison claim as "paranoid idealization" without ever examining me and with no basis in fact.

88) On one occasion after I had notified Great Meadow CF officials and Dr Foote that I wished to terminate the blood circulation blockage medication because I had had severe side effects from it,Dr Glennon,still not informing me that Dr Jung had ordered the prolixin. grabbed my arm and forcibly injected it into me despite my objections. Although the prolixin was terminated before my return to Clinton CF in 1983,I had sustained significant pain and suffering both physically and mentally,from⁺  the acts of the defen-dants.

89) When I returned to Clinton CF,the conspiracy continued and DOCS continued its plot to kill me to eliminate me as a witness and to defraud the fedearl government as well as to take revenge against me for having caused the FBI investigation and discipline of former Judge Hannigan and attorney Violante. The case Welch v Smith,supra,79CV280E, was scheduled for pretrial discovery and filing of pretrial statements outlining what parties intended to prove. The defendants and their attorneys New York State Attorney General and his assistants  were prepared to kill me and raise defenses thereto in the federal court in Welch v Smith,etc  I filed a motion for assignment of counsel to aid me in obtaining important information from the state appellate courts pertaining to the discipline of former Judge Hannigan and Violante which I needed to prepare my case for trial,and when US Magistrate Maxwell denied my request to assign counsel,I appealed that denial as a pretrial collateral order to the Second Circuit and the US Supreme Court hence the case‧ was delayed. I was transferred to Attica CF in 1985 and immediately upon arrival. I was transferred to Marcy CNYPC without a court order by defendants Francis Mills,Dr  Samuels,then Supt Walter Kelly,Dep Supt Hans Walker and others.

90) When I returned from Marcy CNYPC in 1985,I was put in an Intermediate Care Unit

(ICP) at Attica CF which is a unit for mentally ill prisoners many of whom are on anti-psychotic drugs. Within weeks I was converged on in a cell without provocation by CO Ahearn and others as stated at paragraph 81, supra, and was punched, knocked down, handcuffed and taken to SHU while Capt O'Connor, Lt Wolfe and others stood by watching and did nothing to stop the illegalities well knowing I had done nothing to provoke the attack. While in SHU, two FBI Agents toured the SHU and announced that they were investigating inmate beatings—I did not then discuss my situation because of the intensity of the conspiracy and my being in a cell and not sure of my safety if I spoke then. In or about 1989-1990 it became well circulated throughout Attica CF and other DOCS facilities that the FBI had infiltrated Attica and other DOCS facilities by informants, FBI Agents etc, who were deployed to investigate this conspiracy. In 1993 I was transferred to Great Meadow CF.

90) While at **Elmira** CF in 1994, I was put in SHU by then Capt Burge who was aware of the ongoing FBI investigation and infiltration of DOCS. While in SHU a Sgt John Doe made overt homosexual advances toward me as a continued effort to engage me in homosexual conduct to discredit and kill me. We were both alone in a visiting room area where I was being issued personal property.

91) In 2006 while in Gouvernor CF SHU and in 2006 while at Auburn CF in a double bunked cell, DOCS officials housed me in cells with known homosexual inmates who made known that they were aware of the conspiracy and had been housed with me to **try** to engage me in homosexual activity. Although they were unsuccessful in doing so as always since, I am not a homosexual and never have been, the maliciousness and design of the conspiracy and plan of DOCS officials is evidenced by the repeated and continued acts such as these.(SEE ALSO PARAGRAPHS 55,56,57,58,59,60,61,62,63,64,65,75,76,81,83-90, SUPRA).

92) DOCS officials and coconspirators have engaged in the foregoing and much more maliciousness and known baseless conduct towards me in efforts to discredit me and to arbitrarily brand me a homosexual to further their food poisoning/contamination plot and to defraud the federal government.

93) In 1990 while at Attica CF I was informed on separate occasions that my mother Mae Ruth Brown had died while in a coma in a Buffalo hospital. My investigation has disclosed that she was rushed from Niagara Falls Memorial Hospital via ambulance to the Buffalo hospital after Niagara Falls Memorial hospital failed to provide proper treatment to her for a stroke she had suffered in that the tubes inserted in her were solidified and clogged while she lay in a coma prompting relatives to transfer her to a Buffalo hospital where she died. My brother Leslie Welch of Benton Harbor Michigan, died after being struct by an oil truck in Michigan in or about 1990 while the truck

driver survived the crash as would be expected of a driver of a large oil truck. I have
reported both of such matters to FBI authorities who have investigated such matters
and possess the investigative results which are believed will result" in criminal pro-
secution of the conspirators who acted to further the goals of this conspiracy.

94) As far back as 1982-1983 at Great Meadow CF DOCS officials used their prison
intercom to make declarations on many occasions to convey threats to me such as adopting
names of persons objects or things to make veiled threats declarations etc (SEE ALSO
PARAGRAPHS 81 82 SUPRA). At Great Meadow CF a Sgt Carpenter (with a name also meaning
"a person who builds or repairs wooden structures" which is comparable to a brick
mason which is "a person whose trade is building with stones,bricks,etc "). My brother
Leslie was at the time he was killed such a brick mason and Great Meadow officials on
numerous occasions used their intercom and other conduct to make threats and declarations
as to their plan,knowledge and intent to kill my brother and family members.

95) Federal courts generally recognize that "the nature of conspiracies often makes
it impossible to provide details at the pleading stage and. . . the pleader should be
allowed to resort to the discovery process and not be subject to dismissal of his com-
plaint " 5 C Wright & A Miller,Federal Practice & Procedures,#1233,at 257(2d Ed 1990);
Brewer v Rockwell Intern Corp  40 F 3d 1119 1126(10th Cir 1994).

96) As recent as during the period of 9/14/07 to 10/14/07 while I was confined in
Orleans CF SHU as asserted in paragraphs 30-34 et seq supra,while being escorted to
recreation in handcuffs,CO Mardino made inappropriate homosexual advances toward me by
putting his arm around my shoulder inappropriately; and at other times while handing
out supplies,he inappropriately touched my hand/fingers in a homosexual advance; he
also made lip jestures toward me while in SHU inappropriately on several occasions. Such
conduct shows a continued design of the conspiracy that has repeatedly occurred by many
of the conspirators in their continued efforts to discredit and poison/contaminate me.
These and many more acts of conspiracy committed pursuant to the policy and practice of
DOCS officials  will be proven at the trial of this action.

97) While confined at the Niagara County Jail unable to make any bail due to a parole
revocation detainer during 1999 2000, defendants Registered Nurse Deanna Patterson and
Dr James Hohensee without any basis in fact and knowing that their claims were false
referred me to mental health for alleged "panic attacks" and documented in medical
records which I have read a known false claim that I have "panic attacks" and "anxiety"
attacks. A mental health official Dr Susan Waytak briefly interviewed me concerning this
baseless and known false referral and has maintained a mental health file as to this
fraudulent action which I have viewed. All of such are acts of conspiracy committed
pursuant to the policy and practice shown herein to fabricate known false evidence to
further the goals of the conspiracy to attempt to  clear or support defendants Dr Samuels
RN Francis Mills and others referred to at paragraphs 38 39 40,41,42 43 supra.

98) All defendants,including DOCS,Marcy CNYPC and others have been requested to expunge and refrain from maintaining the disciplinary,mental health and security files and records being fraudulently maintained and created by them and they persist in the fraudulent creation and maintaining of such records and have refused to expunge the same and to destroy and cease and desist from creating and maintaining same.

99) New York State Division of Parole members well knowing of the fraudulent and conspiratorially creAted and maintained mental health,disciplinary and security records, joined the conspiracy by using such records to repeatedly deny me parole and hence to keep me incarcerated  to facilitate acts of conspiracy and to further the goals of such conspiracy pursuant to the adopted policy and practice of defendants.Thus, parole board members Eichelberger,Umina and Levy denied me parole 1993; and members  Buchanan, McSherry and John Doe 1991. Dr Samuels at Attica in 1991 visited me at my cell in regard to upcoming parole board appearances and stated he would be submitting a report to the parole board regarding my situation. In addition,it is common practice that such matters as mental health files,security files,disciplinary files,etc .are made available to Parole commissioners reviewing cases for prospective parole release consideration. The defendants obviously reviewed and considered such records in my case thereby denying me equal protection of the laws and equal opportunities for parole release by knowingly considering fraudulent and conspiratorially created records to deny me parole release in the past. I have served the entire prison term involved in that previous conviction for robbery under Niagara County indictment numbers 5946 & 5946A(SEE PARAGRAPHS 38-53, AS TO ROBBERY CONVICTION AND CONSPIRACY BY JUDGE HANNIGAN AND OTHERS).

100) All defendants herein knew and intended by creating fraudulent records as to me they were furthering the goals of a conspiracy and policy adopted by their superiors and in the case of superiors that they were creating policy as policymakers for subordinates to follow.

101) The maintaining and existence of the said mental health,disciplinary and security files in part influenced the revocation of my parole in 1996 by defendants Martin Horn(former Chairman);Judy Bundy(former parole prosecutor);Richard Law(former parole hearing officer); Judith Cummins(former Administrative Law Judge) who acted together in 1996 to conduct preliminary parole hearings (Richard Law) and final hearing(Judith Cummins) and to affirm such action on appeal (Martin Horn) to revoke my parole on the testimony of coconspirator Detective Jim Galie despite knowledge that criminal charges brought against me by Galie and others(SEE PARAGRAPH 66,SUPRA) had been dismissed and Galie's known false allegation that he saw me throw drugs in a bar was the same claim he made in the criminal case which was dismissed and the only basis for parole revocation charges. The parole defendants as well as police officials knew the charges had no merit and yet prosecuted me and revoked my parole for 2 years under the influence

of the conspiracy herein and records maintained pertinent thereto. I was incarcerated from 7/5/96 to 7/15/98 on a two year hold in this matter.

102) Similarly in 1999, I again had my parole revoked as part of the continuing discrimination policy and conspiracy adopted herein when Niagara County officials and New York State parole officials acted together to confine and continue my confinement on criminal and parole revocation charges that they knew had no merit and in part had been fabricated by New York State Police Investigators who falsely claimed I made a drug sale to an undercover investigator as well as other illegalities.(SEE PARAGRAPHS 68-70,SUPRA).

103) Further,during my revoked parole in 1996 part of which term I served at Mohawk CF, a Sgt Hund,CO Albright and others made attempts to put me in the middle of a violent riot at Mohawk CF on 7/18/97 despite knowing that I was in the facility law library at the time the riot broke out in the yard and that I was a non-participant therein(SEE PARAGRAPH 81,SUPRA ). I was told by Hund I had to go to the yard in the riot but I refused.

104) In furtherance of the adopted policy and conspiracy herein and discriminatory treatment, I was forced under threat of violence to be admitted to mental observation cells as well as to be interviewed by psychiatrists Dr Melendez and Dr Singh and others at Clinton CF in 2001 et seq.

105) At Auburn CF on 5/18/06,over my objections and under threat of SHU disciplinary confinement by CO Hia,Sgt Fasce,complaints to Lt Ouimette(who was in charge of double bunking at Auburn),complaints to Supt **GRAHAM** Dep Supt Security Bellnier,Dep Supt Rourke who all had knowledge of my doublebunking,I was forced to house in a doublebunk cell with known homosexual inmates who tried to provoke fights which all prison officials were fully aware of as they sat by and heard the loud arguing repeatedly occur in the hearing of CO Hia,Sgt Fasce and others in the block and were also informed of the same. Yet,nothing was done to correct this matter for some 60 days(approx) during which I was required to leave food items in the cell accessible to such inmates,while attending programs and also required to sleep in same cell therwith.

### CLAIMS

106) Adopting all allegations of paragraphs 1 through 105,supra,as though fully set forth here,I make the following claims:

107) Defendants denied me equal protection and equal treatment afforded to other prisoners under the law during a continuous course of conduct,adopted policy and practice to conspire and discriminate against me thereby entitling me to bring this suit challenging all conduct that is part of that violation even conduct outside the statute of limitations period. Cornwell v Robinson,23 F 3d 694(2dCir1994)

108)Defendants deprived me of wholesome and nutritious food and contaminated foods served to me resulting in serious physical injury to me. USCA 14 ,42 USC 1983

109) Defendants acted in part on racial invidious discriminatory motives to deny me food of wholesome and nutritious nature and to contaminate food served to me. 42 USC 1985(3)

110) Defendants knowing of my federal witness status conspired to deter me by force, intimidation, threats and attempted murder, from freely and fully testifying in federal court or to injure me on account of my federal witness status. 42 USC 1985(2)(First Part).

111) Defendants deprived me of equal protection of the laws by denying me protective custody housing enjoyed   by other prisoners in similar situations. USCA 14;42 USC 1983

112) Defendants deprived me of equal protection of the laws by denying me court ordered protection ordered by Judge Elfvin. USCA 14; 42 USC 1983

113) Defendants denied me equal employment opportunities by defaming my character, libel and slander and branding me as mentally ill all of which defendants knew was false and would become part of my record(available to employers and other outside agencies) USCA 14 ;42 USC 1983

114) Defendants denied me the normal opportunities for enjoyment of life by use of defamatory, slanderous, libelous and known falsehoods of mental illness, homosexuality, disciplinary charges, etc ;42 USC 1983 ; USCA 14

115) Defendants unlawfully imprisoned and confined me in SHUs. USCA 14,4

116) Defendants forced psychiatric or anti psychotic drugs into my body against my will and without my consent. USCA 14 ;42 USC 1983

117) Defendants intentionally inflicted pain and suffering on my person both mental and physically, USCA 8 ; 42 USC 1983

118) Defendants unlawfully imprisoned and confined me in mental institutions. USCA 14  4 ;42 USC 1983

119) Defendants unlawfully confined and imprisoned me by revoking my parole. USCA 14 ,4 ;  42 USC 1983

120) By conspiring to deprive me of the multiple millions recoverable herein as damages, defendants deprived me of rights under the 1rst and 14th Amendments. USCA 1, 14 ;42 USC 1983

121) Defendants conspired in part for the purpose of impeding, hindering, obstructing or defeating the due course of justice in state courts or territories with the intent to deny me equal protection of the law, or to injure me in my person or property for lawfully enforcing or attempting to enforce my right to equal protection of the laws. 42 USC 1985(2)(Second Part); Kush v Rutledge 460 US 719, 724-725 103 S Ct 1483, 1487 (1983).

122) Defendants actions are in part retaliatory for my having filed inmate grievances and complaints against Wells, Abbrose and others. USCA 1, 14 ;42 USC 1983

123) Defendants unreasonably delayed and denied me medical treatment for serious and known medical conditions thereby inflicting serious injury and shortening my life expectancy. USCA 8,14; 42 USC 1983.

124) Defendants delayed and denied me medical treatment unreasonably while knowing of my diagnosed serious medical conditions with the intent to seriously injure and kill me to prevent me from freely and fully testifying in federal court or on account of my having been a federal witness/crime victim, 42 USC 1985(2)(First Part).

125) Defendants denied me and unreasonably delayed medical treatment for diagnosed serious illness while acting in part on racial,invidious discriminatory motives,to deny me equal protection of the laws. 42 USC 1985(3)(First Part);Griffin v Breckenridge,403 US 88,102,91 S Ct 1790,1798(1971).

126) Defendants having a duty and power to prevent a known conspiracy to violate my civil rights under 42 USC 1985 neglected or failed to do so,42 USC 1986.

127) Defendants knowing of my federal witness status conspired to deter me by force intimidation threats and murder of my family members from freely and fully testifying in federal court or to injure me on account of my having done so or having been a federal witness. 42 USC 1985(2).

128) Defendants maliciously prosecuted me on 1996 parole revocation charges despite dismissal of the criminal case involving identical charges which were determined on the merits in my favor. USCA 4,14; 42 USC 1983.

129) Many of the written reports referred to herein are mental health referrals or contain statements purporting to refer me to mental health or claiming mental illness against me and evidence the knowledge of the policy and practice of such and link the defendants to the policy of conspiring to deprive me of civil rights and to kill me. Janetka v Dabe,892 F2d 187,191(2d Cir 1989).

130) Defendants confined me to disciplinary SHU on numerous occasions without due process or equal protection of the law afforded to other prisoners  USCA 14;42 USC 1983

131()Defendants by repeatedly revealing my complaints and lawsuits to inmates and others violate rights secured under the lrst & 14th Amendments USCA 14;42 USC 1983

132) Defendants conspired with private persons including CIs TP11,TP10,RPW1 and others tpo deprive me of civil rights Singer v Suffolk County Sheriff,63 F3d 110,119 (2d Cir 1995); 42 USC 1983

133) By all of the combined acts and conduct set forth,defendants deprived me of due process and equal protection of the laws  USCA 14; 42 USC 1983

134) The acts performed by the judge and prosecutor defendants are non-judicial and non prosecutorial functions and not protected by absolute immunity Forrester v White, 484 US 219,227,229(1988);Smith v Garretto,147 F3d 91,94(2d Cir 1998)

135) Defendants interfered with caused the malice of federal court proceedings in Welch v Smith, 79CV280E to prevent me from freely and fully testifying by use of threats, intimidation, force and injured me on account of my having attended or testified in this federal court proceeding   42 USC 1985(2)

136) Defendants engaged in the conduct alleged in paragraph 135, supra, to deprive me of equal privileges and immunities and equal protection of the laws and acted in part on racial, invidious discriminatory animus   42 USC 1985(3)(first part); Hampton v Hanrahan, 600 F 2d 600

RELIEF REQUESTED:

1) Refer this complaint to the appropriate US Attorney & FBI office for review for arrest and criminal prosecution of all conspirators involved in continued conspiracy and if found guilty of murder of any of my family members or myself seek most severe punishment including death penalty

2) Grant monetary relief against defendants in their individual capacities and jointly and severally at three billion dollars compensatory damages and three billion dollars punitive damages

3) Grant temporary and permanent injunctive relief against continuation of the policy and practice shown herein and preventing my confinement in New York DOCS facilities pending outcome and trial of this civil rights action and any prosecution instituted by the US Dept of Justice, FBI, or US Attorney offices concerning the within matters or any related conspiracies and enjoining defendants from confining me to SHU

4) grant an order or subpoena directing FBI and US Dept of Justice officials to produce any and all information in their possessions relevant to this conspiracy and their investigations thereof since sovereign immunity does not apply in this federal court proceeding

5) order all defendants to produce any and all records, mental health, security, or other records, which pertain to me including those held by the appellate division judges and other judges defendants via subpoena discovery or other appropriate process

6) grant leave to proceed in forma pauperis and certify that this complaint sets forth sufficient facts showing plaintiff is in imminent danger of at least serious physical injury

7) due to my incarceration and indigent status, grant an order directing that sufficient copies of the complaint be made by some authorized person and provided to the US Marshal's service for service on the numerous named defendants and/or that the costs for service and making of copies of the summons and complaint be charged to me as collectable from the funds from any monetary judgment obtained by me herein or that I be allowed to pay a reduced fee for such copies and service by the US Marshal

8) alternatively assign counsel to assist me with making service of the complaint and making the necessary copies for service or, alternatively, order DOCS officials to advance me the necessary funds for making copies of the summons and complaint to be served on defendants

9) grant compensatory damages at one billion dollars against each municipality defendant which is not entitled to immunity under federal law   Howlett v Rose, 496 US 356 376 377

10) Enjoin the State of New York from restraining me of my liberty under Niagara County indictments 1999-051 & 1999-128 & 5946 & 5946A which are being illicitly used by conspirators to carry out acts of conspiracy in clear bad-faith thus justifying federal court intervention herein   Cf Younger v Harris, 401 US 37

10) Due to the serious nonfrivolous claims set forth and to insure that I am not not denied access to the court due to the numerous defendants named and to be served, I respectfully submit that the court should fashion a remedy to insure service on the defendants or order prison officials to advance the necessary funds for copying and mailing expenses  Bounds v Smith,430 US 817(1977)

11) grant an order directing all defendants to expunge all fraudulent records maintained by them as to me and to provide me with same so that I may appropriate review and destroy the same as well as to produce same for this court's review herein

12) grant an order directing that any and all outside agencies or sources of any kind not be allowed access to the said fraudulent records,including mental health and prison disciplinary and security records, to deny me employment or to use in any way whatsoever against me to prohibit my exercise of rights to employment,equal opportunities to hosing,and enjoyment of rights equal to those of ordinary citizens in free society

13) grant declaratory relief establishing my rights and declaring the policy and practices herein shown to be unconstitutional and illegal

I declare under penalty of perjury that the foregoing  12/9/07
is true and correct (28 USC 1746)

Elbert Welch #00-B-1648
Orleans Corr Facility

I declare under penalty of perjury that I have mailed this amended complaint to Lawrence K Baerman,Clerk,United States District Court,Northern District of New York, Federal Building,100 South Clinton Street,PO Box 7367,Syracuse,New York  13261-7367 on the  9  day of  December      ,2007,by mailing it via Orleans Correctional Facility S United States Mail System

## AUTHORITY TO RELEASE MEDICAL INFORMATION

I hereby authorize any Special Agent or other authorized representative of the Federal Bureau of Investigation bearing this release within one year of its date to obtain information available from my past or present medical records contained in any hospital, clinic or other medical facility or from any doctor, physician or examining medical official. I request that the custodian of such records in each instance permit my records in connection therewith to be examined, copied or otherwise reviewed.

I hereby release any such hospital, clinic or medical facility or any examining physician, doctor or other such qualified examiner from any liability resulting herefrom.

Full Name _____Elbert Welch 76C527_____
(Signature)

Full Name _____Elbert Welch_____
(Print)

Parent or Guardian
(if required) _____
(Signature)

Date _____April 12, 1979_____

Current Address _____Attica Correctional Facility_____

_____Attica, New York 14011_____

Witness ▓▓▓▓▓▓▓▓▓▓
(Special Agent)
Federal Bureau of Investigation

EXH
A

A-52

LL

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN:

I hereby authorize any Special Agent or other authorized representative of the Federal Bureau of Investigation bearing this release, or copy thereof, within one year of its date, to obtain any information in your files pertaining to my employment, military, credit or educational records including, but not limited to, academic, achievement, attendance, athletic, personal history, and disciplinary records; medical records, and credit records. I hereby direct you to release such information upon request of the bearer. This release is executed with full knowledge and understanding that the information is for the official use of the Federal Bureau of Investigation. Consent is granted for the Federal Bureau of Investigation to furnish such information, as is described above, to third parties in the course of fulfilling its official responsibilities. I hereby release you, as the custodian of such records, and any school, college, university, or other educational institution, hospital, or other repository of medical records, credit bureau, lending institution, consumer reporting agency, or retail business establishment including its officers, employees, or related personnel, both individually and collectively, from any and all liability for damages of whatever kind, which may at any time result to me, my heirs, family or associates because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity of this release, you may contact me as indicated below.

Full Name: _Elbert Welch  76C567_
(Signature)

Full Name: _ELBERT WELCH_
(Typed or Printed Name)

Parent or Guardian: _____
(If required)

Date: _April 12, 1979_

Current Address: _Attica Correctional Facility_
_Attica, New York 14011_

Telephone Number: _____

Witness: ████████████████
(Special Agent)
Federal Bureau of Investigation

b7C



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

August 11, 2005

MR ELBERT JAMES WELCH
**00-B-1648
POST OFFICE BOX 2001
DANNEMORA, NY 12929

Subject: WELCH, ELBERT JAMES

FOIPA No. 1017424- 000

Dear Mr. Welch:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| □(b)(1) | □(b)(7)(A) | □(d)(5) |
| □(b)(2) | □(b)(7)(B) | □(j)(2) |
| □(b)(3)_____ | ⊠(b)(7)(C) | □(k)(1) |
| _____ | □(b)(7)(D) | □(k)(2) |
| _____ | □(b)(7)(E) | □(k)(3) |
| _____ | □(b)(7)(F) | □(k)(4) |
| □(b)(4) | □(b)(8) | □(k)(5) |
| □(b)(5) | □(b)(9) | □(k)(6) |
| □(b)(6) | | □(k)(7) |

12 **page(s)** were reviewed and 12 **page(s)** are being released.

☐ Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☐ referred to the OGA for review and direct response to you.

    ☐ referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

⊠ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or

LL

EXH C-1

Information Appeal. Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☐ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(2)

EXH C-2

LL

Case 1:07-cv-00831-WMS   Document 7   Filed 12/17/07   Page 41 of 42

Telephone: (202) 514-3642                    Washington, D.C. 20530

NOV 2 0 2006

Mr. Elbert Welch
DIN 00-B-1648
Auburn Correctional Facility
135 State Street                    Re:  Appeal No. 05-2897
Post Office Box 618                      Request No. 1017424
Auburn, NY  13024                        ADW:CL

Dear Mr. Welch:

    You appealed from the action of the Headquarters Office of the Federal Bureau of
Investigation on your request for access to records pertaining to yourself.  I regret the delay in
responding to your appeal.

    After carefully considering your appeal, I am affirming the FBI's action on your request.
The records responsive to your request are exempt from the access provision of the Privacy Act
of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.96 (2006).  Because these records
are not available to you under the Privacy Act, your request has been reviewed under the
Freedom of Information Act in order to afford you the greatest possible access to them.

    The FBI properly withheld certain information that is protected from disclosure under the
FOIA pursuant to 5 U.S.C. § 552(b)(7)(C).  This provision concerns records or information
compiled for law enforcement purposes the release of which could reasonably be expected to
constitute an unwarranted invasion of the personal privacy of third parties.

    If you are dissatisfied with my action on your appeal, you may seek judicial review in
accordance with 5 U.S.C. § 552(a)(4)(B).

                                    Sincerely,

                                    Daniel J. Metcalfe
                                    Director

EXH D

LL.



U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No. 190-BF-35139

One FBI Plaza
Buffalo, NY 14202

November 15, 1999

Mr. Elbert Welch
Niagara County Jail
Box 496
Lockport, New York 14094

Dear Mr. Welch:

This is in response to your Freedom of Information/
Privacy Acts (FOIPA) request received by this office on November
5, 1999.

We have completed a search of the manual and automated
indices to the central records system maintained in Buffalo and
material responsive to your request has been located.

Please be advised the material responsive to your
request is too voluminous to be processed using the resources of
this office. Accordingly, we have referred your request to FBI
Headquarters for processing. The FOIPA Section will maintain
your request by order of receipt and will assign it for
processing in turn.

Headquarters will assign your request an FOIPA number
and advise you of that number as soon as possible. Any future
correspondence concerning this request should be directed to FBI
Headquarters, FOIPA Section, 935 Pennsylvania Ave. N.W.,
Washington, D.C. 20535-0001.

Sincerely yours,

BERNARD A. TOLBERT
Special Agent in Charge

By:

PAUL MARK MOSKAL
Supervisory Special Agent
Chief Division Counsel

EXH
E

LL